**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHEET METAL WORKERS LOCAL 22 PENSION, WELFARE, ANNUITY, EDUCATION, TRAINING AND INDUSTRY FUNDS, in its own right and by and through its TRUSTEES, by and through THOMAS GALLAGHER as Administrator, Trustee and Fiduciary,<br><br>Plaintiffs,<br>v.<br><br>RICHARD JOSEPH VALENTI, et al.,<br><br>Defendants. | Civil Action No.: 07-4576 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

## INTRODUCTION

This matter arises out of allegations of outstanding pension plan withdrawal liability and benefit contribution arrearages by a pension fund against the president and sole shareholder of the company and his wife (hereinafter the "Valenti Defendants"). Currently before the Court are cross-motions for summary judgment filed by Plaintiffs and Defendant Norris, McLaughlin & Marcus, PA (the "Norris Firm" or "Defendant"), respectively. Plaintiffs allege that a mortgage taken by the Norris Firm on a property owned by the Valenti Defendants constitutes a fraudulent transfer pursuant to New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-25. The Court has considered the submissions made in support of and in opposition to the instant motions.[1] No oral argument was

[1] This Court's jurisdiction is premised on 29 U.S.C. § 1132.

heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Plaintiffs' motion is denied and Defendant's cross-motion is granted.

**LEGAL STANDARD**

A court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## DISCUSSION

### I. Background

The following relevant facts are undisputed unless noted otherwise.

Plaintiffs

Plaintiffs Sheet Metal Workers Local 22 Pension, Welfare, Annuity, Education, Training and Industry Funds (hereinafter Plaintiff or the "Funds") administer certain employee benefit plans for members of the Sheet Metal Workers Local 22 ("Local 22"). (Pl. 56.1 Stmt., ¶ 1; Def. Responsive Stmt., ¶ 1). The Funds are a Taft-Harley trust fund established and maintained for the purpose of providing retirement and other related health and welfare benefits to eligible participants and beneficiaries pursuant to 29 U.S.C. § 186(c)(5). (Id., ¶ 2). The Funds are an "employee benefit plan" within Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), with a principal place of business in Cranford, NJ. (Id., ¶¶ 6, 8). The Trustees are the plan sponsor of Sheet Metal Workers Local 22 Pension, Welfare, Annuity, Education, Training and Industry Funds Plan (the "Plan"), a multiemployer plan within the meaning of 29 U.S.C. § 1002(37). (Id., ¶ 3).

Defendants

Valairco, Inc. ("Valairco"), incorporated in the State of Delaware in 1968, is engaged in the business of installation and servicing of heat and air conditioning equipment. (Pl. 56.1 Stmt., ¶¶ 14, 15; Def. Responsive Stmt., ¶¶ 14, 15). From 1968 through at least 2006, Defendant Richard Valenti was the President and sole shareholder of Valairco. (Id., ¶¶ 12, 13).

Defendant Norris, McLaughlin & Marcus, PA (the "Norris Firm" or "Defendant") provided legal representation to Valairco and Richard and Katherine Valenti (Richard's wife), individually and personally, between approximately 1996 and 2007. (Id., ¶ 52). In 1996, the Norris Firm

prepared for Valairco a document entitled "Unanimous Consent of the Sole Shareholder and the Board of Directors of Valairco, Inc." (hereinafter the "1996 Unanimous Consent Document"). (Id., ¶ 53). The 1996 Unanimous Consent Document provides, in pertinent part, that: (a) Valairco had a negative net worth, creating concerns by creditors and lenders about Valairco's profitability and operations, and (b) Valairco was indebted to Richard Valenti in the amount of $105,456.85. (Id., ¶¶55, 56). The 1996 Unanimous Consent Document also provides that "Richard and Katherine P. Valenti, to the extent of her interest in the Green Brook Property, have agreed to contribute the Green Brook property to [Valairco] as a capital contribution, subject to the Midlantic Mortgage, which [Valairco] has agreed to assume." (Underwood Cert., Ex. D). The 1996 Unanimous Consent Document further provides that "the Company accepts the capital contribution of the Green Brook Property." (Id.). Plaintiffs maintain that pursuant to such provision, Richard and Katherine Valenti contributed their interest in the Green Brook property to Valairco in 1996 (Pl. 56.1 Stmt., ¶ 59), whereas the Norris Firm maintains that "such provision did not constitute a contribution of the Green Brook property to Valairco, but simply "authorized Valairco to accept such a contribution." (Def. Responsive Stmt., ¶ 59).

Bankruptcy Proceeding

Valairco filed for Chapter 11 bankruptcy on April 14, 2005. (Pl. 56.1 Stmt., ¶ 34; Def. Responsive Stmt., ¶ 34). The Norris Firm served as legal counsel for Valairco in said bankruptcy proceeding. (Id., ¶ 66). Valairco's Fifth Amended Plan of Reorganization, as confirmed by the Bankruptcy Court, provided that Richard and Katherine Valenti would convey their interest in the Green Brook property to Valairco as "new value" to the debtor so as to maintain Richard Valenti's equity in Valairco post bankruptcy. (Id., ¶¶ 45, 47). The proceeds from the sale of same were used

in part to fund the reorganization plan and distributions to creditors. (Id.).

On May 2, 2005, the Valentis executed a Guaranty in favor of the Norris Firm guaranteeing payment of all legal fees incurred by the Norris Firm on behalf of Valairco. (Pl. Response to Def. Stmt. of Undisputed Material Facts, ¶ 10).

Real Estate Transactions

On September 19, 2006, Plaintiffs' counsel sent a letter to the Norris Firm, acting as counsel for Valairco and Richard and Katherine Valenti individually, raising the issue of Richard Valenti's personal liability to Plaintiffs, as a precursor to the instant litigation. (Pl. 56.1 Stmt., ¶ 72; Def. Responsive Stmt., ¶ 72).

Between September 1, 2006 and January 31, 2007, the Norris firm took steps on behalf of Valairco culminating in a series of transactions which transferred title for various properties owned by Richard Valenti to Katherine Valenti, with Richard Valenti remaining liable for all mortgages and other liens. (Id., ¶ 82). These properties included the Summit NJ property, the Manville NJ property, and the Blooming Grove PA property. (Id.). The Real Estate Transfer Agreement ("RETA") which embodied these transactions states that the transfers set forth therein were for "good and valuable consideration." (Id., ¶ 83). Consideration in the amount of $10.00 was ultimately given for each of the foregoing transfers. (Id., ¶¶ 96, 105, 112). The RETA provides that Katherine Valenti would contribute her interest in the Green Brook property to Richard Valenti so as to allow Richard to fund the Valairco Chapter 11 Plan, conditioned upon the transfer of reasonably equivalent consideration by Richard to Katherine. (Id., ¶ 84).

Promissory Note and Mortgage Agreement

In connection with their legal representation of Valairco, the Norris Firm prepared a

"Promissory Note" whereby Valairco, Richard and Katherine Valenti agreed (on a joint and several basis) to pay the Norris Firm $323,592.55 plus interest on principal at a rate of 6% per year. (Pl. 56.1 Stmt., ¶ 116; Def. Responsive Stmt., ¶ 116). The Promissory Note provides that such amount would be secured by a first mortgage in favor of the Norris Firm on the Blooming Grove PA property (hereinafter "Pennsylvania Property"). (Id., ¶ 117). The Promissory Note was executed by Richard Valenti as President of Valairco and by Richard and Katherine Valenti personally and individually. (Id., ¶ 118).

The Norris Firm also prepared a document entitled "Open-End Mortgage and Security Agreement" (hereinafter "Mortgage Agreement") whereby Richard and Katherine Valenti personally agreed that: (a) Valairco was indebted to the Norris Firm in the amount of $323,592.55 (as set forth in the Promissory Note) and (b) a mortgage and a security interest for said amount would attach to their Pennsylvania Property. (Id., ¶ 119). The Mortgage Agreement was executed by Richard and Katherine Valenti on December 5, 2006. (Id. ¶ 120). The Norris mortgage attached to the Pennsylvania Property – which was previously unencumbered – as a first mortgage. (Id., ¶ 122).

Count Twelve of Plaintiffs' Second Amended Complaint alleges, in relevant part, that the Norris mortgage (and its attachment to the Pennsylvania Property) was not done in good faith and was not for a reasonably equivalent value; therefore, the aforesaid transfer to the Norris Firm of the Norris Mortgage constitutes a fraudulent conveyance in violation of New Jersey's[2] Uniform

[2] It is undisputed that New Jersey law applies to Plaintiffs' state law claims.

Fraudulent Transfer Act, N.J.S.A. 25:2-25.[3] Count Thirteen of Plaintiff's Complaint seeks to avoid said transfer. Both parties now seek summary judgment as to such claims.

## II. Analysis

### A. Fraudulent Conveyance

Plaintiffs argue that the first mortgage taken by the Norris Firm on the Pennsylvania Property constitutes a fraudulent transfer pursuant to New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-25, inasmuch as such transfers were made: (1) with actual intent to hinder, delay or defraud the Plaintiffs,[4] and/or (2) without the exchange of reasonable consideration.

The Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. 25:2-20 et seq, governs Plaintiffs' fraudulent conveyance claim. See Gilchinsky v. Nat'l Westminster Bank N.J., 159 N.J. 463, 732 (1999). The UFTA provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of

---

[3] Count Twelve of Plaintiffs' Second Amended Complaint fails to specify under which section of New Jersey's UFTA it is brought. To the extent Plaintiffs rely on N.J.S.A. 25:2-27(b), the Norris Firm argues that any such claim would be time-barred pursuant to N.J.S.A. 25:2-31(c) because Plaintiffs first filed the Second Amended Complaint on January 12, 2009, more than one year after the December 6, 2006 Mortgage was recorded. See N.J.S.A. 25:2-31(c) (providing that "[a] cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought . . . . Under subsection b. of [N.J.S.A. 25:2-27] within one year after the transfer was made or the obligation incurred."). Plaintiffs fail to address this point. Accordingly, to the extent Plaintiffs have attempted to proceed under N.J.S.A. 25:2-27, the Court finds such claim to be time-barred pursuant to N.J.S.A. 25:2-31(c).

[4] It is undisputed that Plaintiffs are creditors of both Valairco and Richard Valenti.

the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25. "The purpose of the [UFTA] is to prevent a debtor from placing his or her property beyond a creditor's reach . . . [in order to] allow the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." Gilchinsky, 159 N.J. at 475. Thus, there are two questions that must be answered in evaluating a claim under the UFTA: (1) "whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them at some point in time but for the conveyance," and (2) "whether the debtor transferred property with an intent to defraud, delay, or hinder the creditor." Id. at 475-76 (alteration in original; internal quotations omitted). The individual seeking to set aside the conveyance bears the burden of proving actual intent. Id.

To determine whether there was an actual intent to defraud, courts are to consider what are known as the "badges of fraud." These "badges" are found in N.J.S.A. 25:2-26. The considerations for a court under the badges of fraud are whether:

a. The transfer or obligation was to an insider;

b. The debtor retained possession or control of the property transferred after the transfer;

c. The transfer or obligation was disclosed or concealed;

d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

e. The transfer was of substantially all the debtor's assets;
f. The debtor absconded;
g. The debtor removed or concealed assets;
h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
k. The debtor transferred the essential assets of the business to a lien or who transferred the assets to an insider of the debtor.

N.J.S.A. 25:2-26. A finding by a court of one badge can "cast suspicion on the transferor's intent." Gilchinsky, 159 N.J. at 477. A finding of "several in one transaction generally provides conclusive evidence of an actual intent to defraud." Id.

Turning now to the facts at hand, Plaintiffs focus on the following contentions: (a) that the Valenti's interest in the Green Brook property was transferred to Valairco in 1996, (b) that the Norris Firm knew that the Green Brook property was transferred from the Valentis to Valairco in 1996 because they prepared the agreement transferring same, and (c) because the purported consideration for the 2006 transfers between Richard and Katherine Valenti was the Green Brook property – which had already been conveyed to Valairco in 1996 – such transfers were fraudulent. Thus, the crux of Plaintiffs' argument in seeking summary judgment is that the Norris Firm "knew or should have known that there was no consideration, or insufficient consideration, for the transfers from [Richard Valenti] to [Katherine Valenti], because Norris prepared the [1996 Unanimous Consent Document];" therefore, "the December 2006 transfer of a mortgage and security interest to Norris must be avoided." (Id.).

Whether or not the Green Brook property served as sufficient consideration for the 2006

transfers between Richard and Katherine Valenti (and, thus, whether the transfer of Richard's joint interest in the Pennsylvania Property to Katherine alone constitutes a fraudulent transfer) is, however, the subject of a separate motion for summary judgment filed against the Valenti Defendants and has no direct bearing on whether the mortgage issued by the Valentis on their Pennsylvania Property to the Norris Firm constitutes a fraudulent conveyance. To be clear, for purposes of the instant motion, it is immaterial whether the transfer of Richard's joint interest in the Pennsylvania Property to his wife constitutes a fraudulent transfer, or whether the Pennsylvania Property is now owned by Richard and Katherine Valenti jointly or by Katherine Valenti alone.[5] The only issue before the Court is whether the $323,592.55 mortgage (on the Pennsylvania Property) granted by the Valentis to the Norris Firm constitutes a fraudulent conveyance pursuant to N.J.S.A. 25:2-26.

In order to succeed on their fraudulent conveyance claim, Plaintiffs need to show, inter alia, that the mortgage issued by the Valentis to the Norris Firm was effectuated: (a) with actual intent to hinder, delay, or defraud creditors of Valairco and/or the Valentis, or (b) without receiving reasonably equivalent value in exchange for the transfer or obligation. See N.J.S.A. 25:2-25. Plaintiffs argue that fraudulent intent can be inferred based upon the satisfaction of several badges of fraud. Based on the reasons that follow, the Court finds no evidence of fraudulent intent.

First, in support of this argument, Plaintiffs, again, rely heavily upon the 2006 transfers between Richard and Katherine Valenti. Having already found such matters immaterial to the transaction at issue, arguments based on such are hereby rejected without further discussion.

---

[5] This is particularly so given that both Richard and Katherine Valenti are liable under the Guaranty. See Mahoney Decl., Ex. E.

Second, there is no indication that the Norris Firm was an "insider" for purposes of the statute. In this regard, Plaintiffs concede that: (1) attorneys are not designated as "insiders" under N.J.S.A. 25:2-22, (2) attorneys have not generally been considered insiders of their debtor-clients, and (3) "insiders" under the UFTA are generally relatives, partners, officers, directors and persons with control over the debtor. Plaintiffs cite to no binding legal authority for the proposition that a debtor's attorney constitutes an "insider" for purposes of New Jersey's Uniform Fraudulent Transfer Act. Instead, Plaintiffs urge the Court to rely upon an unpublished decision from the Northern District of Georgia for the proposition that "where a close relationship exists, the court must look with 'careful scrutiny at the subject transaction.' " (Pl. Br. at 18) (citing Laddin v. Edwards, 2006 WL 1097491, at *5 (N.D. Ga. April 21, 2006)). There is no evidence before this Court, however, suggesting that the Norris Firm exercised such control or influence over Valairco or the Valentis so as to render the transaction between the Norris Firm and the Valentis not arms-length. See, e.g., Laddin, 2006 WL 1097491, at *5 (determining that, in order for a law firm to be considered an "insider," the plaintiff must show that the law firm "held a 'stranglehold' over [the company] such that the company was not free to act independently."). To the contrary, evidence contained in the record confirms that the Valentis had obtained separate legal counsel in connection with their decision to guaranty Valairco's debts to the Norris Firm. (Pl. Response to Def. Stmt. of Undisputed Material Facts, ¶ 10) (Mahoney Decl., Ex. F, ¶ 13).

In addition, there is no evidence that the transfer at issue was concealed. To the contrary, the Norris Firm's retention by Valairco was approved by the Bankruptcy Court. (Pl. Response to Def. Stmt. of Undisputed Material Facts, ¶ 9). The services rendered were disclosed in three separate fee applications before the Bankruptcy Court, each of which was ultimately approved by the Bankruptcy

Court. (Id., ¶ 16-23; 28-30). Moreover, although Plaintiffs argue that Richard Valenti had no real property in his name after the 2006 RETA was executed (and that such transactions rendered him "judgment proof"), Plaintiffs fail to provide specific evidence of the Valentis' insolvency for purposes of the statute.

The only "badges of fraud" which are arguably present are: (1) the fact that the debtors remained in possession of the property after the conveyance, and (2) the fact that the transfer at issue was made after the debtor had been sued or threatened with suit. As to the former, given that a mortgager generally retains the right to possession of the mortgaged property until there is a default,[6] the Court declines to interpret the fact that the Valentis remained in possession of the Pennsylvania Property as indicative of fraudulent intent. As to the ladder, the December 5, 2006 transfer was indisputably made after Valairco and/or the Valentis had been threatened with suit. See Underwood Cert., Ex. E (containing correspondence from Plaintiffs to the Valentis dated September 19, 2006 concerning Plaintiffs' intent to pursue Richard Valenti personally for Valairco's pension and benefit deficiencies). Nevertheless, the Court finds that the presence of this single factor – although casting some suspicion on the parties' intent – does not, alone, provide sufficient evidence of intent to defraud. See, e.g., Gilchinsky, 159 N.J. at 477 ("Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud.").

Having found no evidence of fraudulent intent, the Court must assess whether Plaintiffs have demonstrated a lack of adequate consideration for the transfer. See N.J.S.A. 25:2-26. The statute

[6] See, e.g., Collins v. Tweedale, 76 F.2d 63, 64 (3d Cir. 1935) (noting that "the mortgagor may retain possession [of the property] until the condition is broken by default in the payment of the mortgage money.").

provides that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." N.J.S.A. 25:2-24(a). It is undisputed that: (1) the Valentis executed a Guaranty in favor of the Norris Firm (on May 2, 2005) guaranteeing payment of all legal fees incurred by the Norris Firm on behalf of Valairco,[7] and (2) a mortgage on their Pennsylvania Property in the amount of $323,592.55 (plus interest) was given by the Valentis to the Norris Firm (on December 5, 2006) "in lieu of" and in exchange for the same amount of money they owed to the Norris Firm in legal fees on behalf of Valairco.[8] In light of the foregoing, Plaintiffs have failed to demonstrate a lack of adequate consideration for the transfer at issue.

Simply put, there is insufficient evidence before the Court suggesting that the mortgage secured by the Norris Firm on the Valenti's Pennsylvania Property was anything but an arms-length business transaction. See, e.g., Johnson v. Lentini, 66 N.J. Super. 398, 406 (Ch. Div. 1961) ("The creditor, even though cognizant of the intent of the debtor to defeat his other creditors, may accept a voluntary preference so long as he only protects his own interest in so doing."). Having found no fraudulent transfer, Plaintiffs' request to avoid such transfer pursuant to N.J.S.A. 25:2-29(a)(1) is denied. Accordingly, Plaintiffs' motion for summary judgment as to Counts Twelve (fraudulent conveyance) and Thirteen (avoidance of fraudulent conveyance) is denied and the Norris Firm's cross-motion for summary judgment as to said counts is granted.

---

[7] (Pl. Response to Def. Stmt. of Undisputed Material Facts, ¶ 10) (Mahoney Decl., Ex. E).

[8] (Pl. Response to Def. Stmt. of Undisputed Material Facts, ¶ 34). See, e.g., Johnson v. Lentini, 66 N.J. Super. 398, 405 (Ch. Div. 1961) ("The grantee, when attempting to support by an antecedent debt a conveyance attacked as fraudulent, has the burden of proving such debt by clear and convincing evidence.").

## CONCLUSION

Based on the reasons set forth above, Plaintiffs' motion for summary judgment as to Counts Twelve and Thirteen of Plaintiffs' Second Amended Complaint is denied. Defendant Norris Firm's cross-motion for summary judgment as to the same claims is granted.

An appropriate Order accompanies this Opinion.

Date: June 7, 2010

Jose L. Linares
United States District Judge